## Case No. 329.

### AMES v. NEW ORLEANS, M. & T. R. CO. et al.

### [2 Woods, 206.][1]

Circuit Court, D. Louisiana. April Term, 1876.

RAILROAD COMPANIES — BONDS AND MORTGAGES— SUBSTITUTION OF NEW BONDS FOR THOSE SECURED BY THE MORTGAGE—FORECLOSURE.

1. The modification of a mortgage does not extinguish it, nor is its lien affected by the substitution of a new note or bond for the original note or bond secured by it.

2. A railroad company having executed a mortgage to secure a limited number of bonds, afterwards executed another mortgage on the same property to secure a larger number of bonds, which recited that the holders of the bonds secured by the original mortgage had agreed to surrender the same, and receive in substitution therefor new bonds, to be secured by the original mortgage as modified by the second mortgage. All the bonds secured by the first mortgage, except twenty, were exchanged for bonds secured by the second. Held, that the holders of said twenty bonds were not entitled to be paid out of the proceeds of the mortgaged property in preference to the holders of the substituted bonds; but that they could not be prejudiced by the increase of the number of bonds secured by the second mortgage, but were entitled to the same proportion of the proceeds of the mortgaged property as if the second mortgage had not been executed.

[Cited in Barry v. Missouri, K. & T. Ry. Co., 34 Fed. 832.]

3. There is nothing in the jurisprudence of Louisiana contrary to the doctrine of this case.

Heard on petition of Arphaxad Loomis and others.

W. W. Howe, for petitioners.
John A. Campbell, contra.

WOODS, Circuit Judge. The bill in this case was filed for the foreclosure of a mortgage executed by the principal defendant on its property and road west of the Mississippi river, in the state of Louisiana. It appears from an agreed statement of facts that on the 15th of March, 1870, the railroad corporation, then known as the New Orleans, Mobile & Chattanooga Railroad Company, conveyed by a deed of that date all its es-

[1][Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

tate and property in Louisiana and Texas west of the Mississippi river, to secure bonds, to be issued at the rate of $12,500 per mile of the main line of road from New Orleans to the Sabine river, and $25,000 per mile from the Sabine to Houston, in Texas, making the entire amount that might be issued under this deed of trust to be $5,562,000, and no more. There were issued, in fact, under the deed of trust, $2,825,000 only. This deed of trust provided that no bonds whatever should be issued on branch roads till they were constructed and their tracks laid. On the first of January, 1872, the railroad company, its name in the meantime having been changed by act of the legislature to the New Orleans, Mobile & Texas Railroad Company, executed a new deed of trust of that date on the same property as that conveyed by the deed of March 15, 1870. The purpose of this deed was to change the limit of the amount of the bonds of the company to be issued under said deed of trust of March 15, 1870, so as to allow besides the bonds already issued an additional issue of $25,000 per mile of bonds for each mile of a branch road to be constructed from Brashear City to Vermillionville, but not to exceed the sum of $1,625,000. This deed of trust recited that it had been arranged and agreed that the holders of the outstanding bonds under the original mortgage and deed of trust should surrender the same for cancellation and receive in substitution therefor bonds to the like amount executed in the name of the New Orleans, Mobile & Texas Railroad Company. This project was so far carried out that all the holders of bonds, secured by the original mortgage and deed of trust of March 15, 1870, except Arphaxad Loomis, and the other petitioners, surrendered their bonds, and received in their stead new bonds issued under and secured by the original mortgage and deed of trust as modified and limited by the deed of January 1, 1872. Loomis and the other petitioners are the holders of twenty of the original bonds. They claim to have a priority over all the new bonds issued to take up the original bonds, and pray for a decree which shall recognize this priority, and declare their bonds to be a first lien on the property conveyed by the trust deed of March 15, 1870, and that their bonds be paid by preference out of the proceeds of the sale of the railroad property when a sale is made.

The theory upon which the prayer of this petition is based is, that those bonds dated January 1, 1872, issued in lieu of the original bonds dated March 15, 1870, are in no way secured by the original trust deed, but have a lien on the railroad property by virtue only of the deed of January 1, 1872. An inspection of this latter trust deed will show that this theory is not founded on fact. The trust deed of 1872 states the fact of the execution of the deed of March 15, 1870, and the inscription thereof, etc., and the purpose

of the railroad company to change the limit of the amount of bonds to be issued and secured under the original trust deed; recites that the holders of the outstanding bonds issued under the original trust deed have agreed to surrender the same, "and receive in substitution therefor new bonds for a like amount executed by the New Orleans, Mobile & Texas Railroad Company, to be issued under and secured by said mortgage or deed of trust (the deed of March 15, 1870) as the same is modified and limited by this instrument." The deed of January 1, 1872, further declares, that "the parties hereto, in consideration of the premises, etc., have covenanted, granted and agreed and do hereby covenant, grant and agree to and with each other, that the stipulations and provisions of the above mentioned mortgage or deed of trust of March 15, 1870, shall be and are hereby modified and limited in the manner and to the effect following, with like effect as if such mortgage or deed of trust had originally contained such modifying and limiting provisions which are herein contained," etc. The deed of January 1, 1872, further declares that "the said party of the first part (the railroad company) in consideration of the premises and of one dollar, etc., in order to secure the payment of the principal and interest of its said first mortgage bonds to be issued in the form and of the tenor and to the effect herein above described in that behalf, according to the tenor and effect of said bonds and the accompanying coupons, and for further assurance and confirmation of the estates and interest conveyed in mortgage by the said original mortgage or trust deed of March 15, 1870, as hereby modified, hath granted, bargained and sold," etc.

These provisions of the deed of January 1, 1872, clearly reveal the purpose of the parties thereto, that the bondholders, surrendering their original bonds for the new ones should not lose any right or estate granted by the first deed of trust, save as the same were modified by the second. It was upon this express condition, thrice repeated in the trust deed of January 1, 1872, that the bondholders consented to give up their old bonds and take the new ones.

It clearly appears that there was to be no cancellation of the mortgage of 1870; all the bonds were designed to be secured by it. The new bonds correspond with the old in amount, interest, time of payment, and only differ in date, and the name of the company, which had been changed since the old bonds were issued.

The modification of the mortgage does not extinguish it, nor is its lien affected by the substitution of a new note for the old one. Watkins v. Hill, 8 Pick. 522; Pomroy v. Rice, 16 Pick. 22; Brinckerhoff v. Lansing, 4 Johns. Ch. 65; Dana v. Binney, 7 Vt. 501;

Chase v. Abbott, 20 Iowa, 154; Conner v. Banks, 18 Ala. 42; Cullum v. Branch Bank at Mobile, 23 Ala. 798. The petitioners claim, however, that the question must be governed by the law of Louisiana, and cite the case of Bell v. Murphy, 2 La. Ann. 765, as authority to show what the jurisprudence of this state is upon the question in hand. In that case a mortgage was given to secure the mortgagee for a particular indorsement made by him for the accommodation of the mortgagor. The note thus indorsed was partly paid by the mortgagor, and a new note given for the remainder due, which the mortgagee indorsed. The court held that the mortgage did not indemnify the mortgagee for this latter indorsement. The reason given was that the mortgage was not a general one to secure the plaintiff for indorsements. It was given as security against the indorsement of a specific note, which the evidence showed had been subsequently novated and extinguished. That case differs from this in this most material particular, that in this case there was an express understanding that the original mortgage should stand for the benefit of the new bonds, and it was upon that condition that the substitution was made. The court is asked to step in between the parties and annul this contract. The law does not annul contracts made by the parties unless they are fraudulent or against public policy. No reason can be given why the contract made between the railroad company and its bondholders should not be enforced.

A very instructive case upon the question presented by this petition, is Stevens v. Mid-Hants Ry. Co., 7 Eng. R. 555, reported also in 8 Ch. App. 1064. In my judgment, the petitioners are not entitled to be paid the full amount of their bonds in preference to the holders of the substituted and other bonds issued under the deed of trust of January 1, 1872. The most that petitioners can claim is that they shall not be prejudiced by any change made in the terms of the deed of March 15, 1870, by the deed of January 1, 1872. They are entitled to have their rights preserved under the original trust deed. This may be done by giving them such part of the proceeds of the sale as they would have been entitled to if the new bonds and new trust deed had never been executed. In other words, as only 2,825 bonds, of one thousand dollars each, were issued under the original trust deed, of which the petitioners hold twenty, they are entitled to twenty 2,825ths of the proceeds of the sale, and no more.